MILLS & LUPTON SUPPLY COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mills & Lupton Supply Co. v. Commissioner
Docket No. 7022-75.
United States Tax Court
T.C. Memo 1977-294; 1977 Tax Ct. Memo LEXIS 150; 36 T.C.M. (CCH) 1173; T.C.M. (RIA) 770294; August 30, 1977, Filed *150 Held, petitioner failed to establish that the addition to its reserve for bad debts was reasonable under sec. 166(c), I.R.C. 1954. Carl A. Swafford and Ford P. Mitchell, for the petitioner. Robert B. Nadler, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $6,322.15 deficiency in petitioner's 1972 income tax. The sole issue is whether petitioner's 1972 addition to its bad debt reserve was reasonable. If so, the addition is deductible under section 166(c). [1]
FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Petitioner is a corporation organized and existing under the laws of *151 Tennessee. It maintained its principal office and place of business in Chattanooga, Tennessee, when it timely filed its 1972 income tax return and when it filed its petition in this case. Petitioner is a closely held corporation with branch offices in Cleveland, Tennessee, and Dalton, Georgia. Its principal business is selling hard goods, pipe valves, fittings, grinding wheels, and electrical equipment to electrical contractors, industrial plants, commercial establishments, and utility customers. Petitioner, an accrual method taxpayer, uses the reserve method of accounting for bad debts under which it deducts the annual addition to its reserve. Petitioner determines its current annual addition to bad debts in the following manner: First, current accounts receivable are multiplied by 4.3940544 percent to arrive at the following year's reserve. Next, the current reserve is adjusted by decreasing it to reflect debts which were worthless at the end of the current year, and by increasing it to reflect recoveries of amounts charged to the reserve in previous years.The adjusted current reserve is then subtracted from the following year's reserve to arrive at the current annual addition. *152 Petitioner's auditors computed the 4.3940544 percent figure from petitioner's actual bad debt experience, as a percentage of accounts receivable, for the period 1928 through 1941. The percentage is used only in years where the accounts receivable balance is greater than that of the previous year. If the accounts receivable balance decreases, petitioner does not correspondingly decrease its reserve balance under the percentage formula. Instead, it maintains the larger reserve established in the previous year. The following schedule reflects a comparison of the actual reserve used and what the reserve would have been had petitioner consistently determined the reserve only through the percentage method: Percentage
Actual Year
Reserve
Reserve
1966
$33,195.80
$39,886.09
1967
37,258.66
39,886.09
1968
42,594.65
42,594.65
1969
52,109.35
52,109.35
1970
50,797.85
52,109.35
1971
49,384.86
52,109.35
1972
43,773.28
52,109.35
For 1966 to 1972, inclusive, the parties stipulated that the trade accounts receivable, charges for bad debts, additions for the recovery of debts previously charged off, and the year-end reserve balance were as follows: *153 Accounts
Balance Year
Receivable
Charges
Recoveries
Dec. 31
1966
$ 755,470.81
$87,410.90
$31,432.00
$ 39,886.09
1967
847,931.31
67,842.91
56,482.66
39,886.09
1968
969,371.17
56,375.17
47,658.90
42,594.65
1969
1,185,905. 96
69,152.79
16,032.54
52,109.35
1970
1,156,058.74
97,951.38
37,691.93
52,109.35
1971
1,123,901.87
93,162.98
15,607.15
52,109.35
1972
996,193.42
67,038.47
53,174.11
52,109.35 Petitioner's average bad debt ratio for the six-year period, January 1, 1967 through December 31, 1972, was 3.57 percent. All of petitioner's sales are on open account requiring no security. When a new account is established, a credit search is performed to determine the credit worthiness of the prospective buyer. In 1970, petitioner established a management team to be headed by a vice president of credit with full time responsibility for accounts receivable management. At the end of each year, petitioner's president and vice president of credit reviewed the receivables for bad accounts.Only accounts over 30 days old were eligible to be declared worthless. Although the president and vice president relied upon their *154 knowledge of the specific account and their experience with accounts in that general business grouping in declaring an account worthless, they considered the age of the account to be the primary indicator of worthlessness. Petitioner charged off both worthless accounts and accounts it thought would become worthless. Not all accounts declared worthless were referred to an outside collection agency.Petitioner frequently continued the collection effort itself which resulted in substantial recoveries. In 1971, for example, $93,162.98 in accounts receivable was written off and $62,609.49 was referred to outside collection agencies. Of the $93,162.98 deemed worthless, $55,221.72 was ultimately recovered. The president's testimony established that the collection record was improved after the appointment of the management team in 1970. In 1972, petitioner deducted $13,864.36 from income as an addition to its bad debt reserve. The respondent disallowed the entire deduction on the ground that petitioner's reserve, without addition, was adequate to cover losses estimated to occur in 1973. OPINION Petitioner, an accrual method taxpayer, utilizes the reserve method of accounting for *155 its bad debts. Petitioner estimated that $52,109.35 of its 1972 accounts receivable would become worthless in 1973 and, as a result, it added $13,864.36 to its reserve of $38,244.99 and deducted the addition. It is petitioner's contention that $13,864.36 constitutes a reasonable addition to its bad debt reserve under section 166(c). Respondent contends that no addition is reasonable because the reserve balance of $38,244.99 is more than adequate to cover petitioner's 1973 estimated losses. Section 166(c) allows, in the discretion of the Secretary, a deduction for a reasonable addition to a reserve for bad debts. What constitutes a reasonable addition is a factual question to be resolved in light of the facts available to the taxpayer at the close of the taxable year. Sec. 1.166-4(b)(1), Income Tax Regs. In determining what constitutes a reasonable addition, the critical question is whether the balance in the reserve at the close of the year is adequate to absorb future estimated losses for that purpose, not whether the addition, however determined, is sufficient. Black Motor Co. v. Commissioner,41 B.T.A. 300, 304 (1940), affd. on other issues 125 F. 2d 977 (6th Cir. 1942). *156 If the reserve is already sufficient to absorb estimated losses, no deduction is permissible. Roanoke Vending Exchange, Inc. v. Commissioner,40 T.C. 735, 740 (1963). The reserve must be reexamined annually to make this determination. Investors Discount Corp. v. Commissioner,48 T.C. 767, 772 (1967). Generally, respondent's determination carries a presumption of correctness. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. His determination of what constitutes a reasonable addition to a reserve for bad debts carries even greater weight because of the discretion vested in him by section 166(c). Krim-Ko Corporation v. Commissioner,16 T.C. 31, 37 (1951). Thus, for the taxpayer to prevail, he must demonstrate that respondent's disallowance of the addition was arbitrary and an abuse of discretion. Petitioner must also show that its additions to the reserve were reasonable. Roanoke Vending Exchange, Inc.,supra at 741. Petitioner contends that the $13,864.36 addition deducted in 1972 was reasonable even though it adjusted its total reserve *157 to the greater of 4.3940544 percent of accounts receivable or the 1971 reserve balance. Petitioner supports this position by arguing that it has consistently used this method since 1941, its management has special knowledge of the business, and its net actual bad debts for the three years preceding 1972 were substantial. Finally, petitioner argues that although respondent's determination in reserve cases is accorded unusual weight, this Court is not required to automatically approve his determination. Respondent contends that the $38,244.99 balance in petitioner's reserve as of December 31, 1972, was sufficient to absorb 1973 estimated losses. He argues that while petitioner may compute its reserve additions by taking a percentage of outstanding accounts, that percentage must produce a reasonable reserve under all facts available to it. Among other facts and circumstances considered, respondent applied the formula approved in Black Motor Co. v. Commissioner,supra.Respondent concluded that petitioner's reserve was adequate and therefore no reserve addition was reasonable in 1972. After a careful consideration of the entire record, we conclude that petitioner *158 has not satisfied its burden of proof regarding either respondent's determination or the reasonableness of its reserve addition. Accordingly, we hold that the entire amount of petitioner's addition to its bad debt reserve in 1972 must be disallowed as a deductible expense. The justification for respondent's action is apparent when petitioner's reserve practices as a whole are considered. Without any addition, petitioner's reserve at the close of 1972 was $38,244.99, whereas net charges to the reserve during that year amounted to only $13,864.36. Although the net charges for the previous three years were higher than $38,244.99, this fact alone does not justify petitioner's addition. The record clearly establishes that petitioner's collection practices were producing substantial collections on accounts deemed worthless. In addition, petitioner's president testified that the collection record was much improved after the new credit management team was appointed in 1970. These factors indicate that petitioner's net actual bad debts were on the decrease. In addition, petitioner's accounts receivable balance reached a high of $1,185,905.96 in 1969 but decreased each succeeding year *159 to only $996,193.42 in 1972. Despite this fact, petitioner insisted on maintaining a reserve balance of $52,109.35 which was established in 1969 by a percentage formula determined in 1941. Although petitioner asserts it consistently used a percentage factor of 4.3940544 times accounts receivable since 1941, the record reveals its actual reserve percentage was 4.50750, 4.63646, and 5.23084 in 1970, 1971, and 1972, respectively. Moreover, in examining petitioner's practice of charging off worthless accounts, respondent discovered that of the $93,162.98 written off as worthless in 1971, $55,221.72 was ultimately recovered. Although it is clear that worthless accounts may be considered by a taxpayer in determining its reserve addition, the accounts must in fact be worthless. See New York Water Service Corporation v. Commissioner,12 T.C. 780, 788 (1949).The record clearly reflects that petitioner improperly charged off accounts not yet worthless but which were thought would become worthless in the future. The small net reserve charge in 1972 compared to the existing reserve balance, the appointment of a new management team in 1970, the declining accounts receivable, *160 the use of a percentage formula established from 13 years' experience from 1928 to 1941, the maintenance of an arbitrarily high reserve, and the charging off of accounts which were obviously not worthless were all facts available to petitioner when it made the decision to increase its reserve. Certainly respondent was entitled to consider these factors as petitioner should have. Having done so, he properly questioned petitioner's addition. Acting on his uncertainty, respondent applied the formula of Black Motor Co.,supra, to test petitioner's reserve balance. The formula yielded an average bad debt ratio of 3.57 percent for the six-year period, January 1, 1967 through December 31, 1972. When multiplied by the 1972 accounts receivable balance of $996,193.42, this yielded a necessary reserve of only $35,564.10, yet petitioner's reserve was already $38,244.99. Respondent argues that all these facts and circumstances of petitioner's business in 1972 indicate that no addition was necessary. He does not argue that petitioner should have used the Black Motor Co. formula to determine its annual addition, only that the formula was one factor to consider. *161 As stated in Black Motor Co.,supra at 304: The test, however, is whether the amount ultimately determined, regardless of formula, constitutes a reasonable addition to petitioner's reserve. What constitutes a reasonable addition will depend upon the facts and circumstances of the business engaged in with relation to general business conditions. A method or formula that produces a reasonable addition to a bad debt reserve in one year, or a series of years, may be entirely out of tune with the circumstances of the year involved. Under these circumstances, we cannot find that respondent's application of the formula and disallowance of petitioner's reserve addition were arbitrary or an abuse of his discretion. In addition, petitioner has not presented us with sufficient evidence to support its conclusion that the addition to the reserve was reasonable. Accordingly, we hold that the entire amount of the 1972 deduction for the reserve additions must be disallowed since petitioner has not carried its burden on either issue. Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩